Appeal number 221293222138 for appellant. Mr. Shannon, please proceed. It pleases the court, counsel. My name is Nisheh Shannon. I represent the United States Court of Appeals. I represent the appellant, cross appellee, Mr. Bruce Lee, in this matter before the court, and I'd ask you to reserve five minutes for rebuttal. Your Honors, this case starts with issues at the indictment level, goes through the trial level, gets to sentencing, and then there's the issue of what happens after the sentence is imposed and the forfeiture issues raised by the government. So unless Your Honors have specific questions as to all the issues raised, I can address them unless Your Honors have specific questions as to the indictment, the Rule 29 motion, the sentencing, guideline calculations, or the forfeiture. Because there's so much, I just wanted to see first if Your Honors had any questions as to specific categories. With regard to the motion to dismiss the indictment, so it seems like the issue is really how one defines the scheme, right? How broadly one is a scheme defined, and then what becomes the wire in furtherance of that scheme. The situation in this case, at least as the motion to dismiss indicated, is that it's duplicitous, number one, as there's two different schemes alleged in each count. But why do we have to look at it that way? It seems to me the government's position is that there's an overarching scheme to profit by getting these tickets from the White Sox at very, obviously, the tickets were designed to be promotional sorts of things, and to make the money from it. So both the acquisition of the tickets and the sale are integral parts of the scheme. They are not, Your Honor, because there's one victim, the White Sox, in the first scheme. What happens in the so-called second scheme, which Your Honor called the profit or the sales from StubHub, do not affect the victim whatsoever. See, I don't see it that way. At least what I understand, especially looking at some of our earlier cases, is that the White Sox actually have a business reason to either give complimentary tickets because of late season attendance. It's a form of advertising, basically. And what this second part of the scheme is taking from them is the goodwill and the opportunity to bring to non-existent prices and instead change things. Well, Judge, respectfully, if you look at what the White Sox benefit from, they receive the compensation that they had requested. Let's say we use one of the vouchers for $5, the $5 voucher. They receive those monies. Well, they receive the money, but I'm talking about the goodwill of the fan, the customer. If you give me a ticket, I can go to the White Sox for $5, let's say. Maybe I'm feeling a little happy, I bring my family members along. So it's more than just the dollars. And if you look at our decision in the Mount case, there's an interesting discussion about why a sports team might want to sell tickets at below market clearing prices. Correct, Judge. And if you look at Mount and you apply it here, yes, they're selling at a low discount rate. However, at some point, that scheme related to the White Sox ends. And that ends when Mr. Lee provides, Mr. O'Neill or Mr. Costello, the co-defendants in this case, the money to purchase the tickets at that discounted rate. So the White Sox got what they were asking for, which is... Well, maybe we just see it a little bit differently, but I understand that that's your point. And then, Judge, if you look at... Why don't we view the scheme from the standpoint of the defendant, Mr. Lee? I mean, after all, as Judge Wood noted, he wasn't getting these tickets just to see if he could. He was getting them to profit from them. And so why can't we, from his perspective, look at it and say, well, the scheme is getting these tickets in the way they did from the White Sox and then selling them in a manner to profit from them. Otherwise, what's the point of the whole thing? Because, Judge, the scheme ends when he gets the tickets from the White Sox. What the government alleges, at least the way they allege it in the indictment, is a second so-called scheme. That is to sell these tickets for a profit. But if we look at who the victim supposedly is in the indictment and the way it's alleged, it's the White Sox. If there's two schemes, what's the purpose of the first scheme? The way it's alleged is the first scheme is to get tickets at a discounted price, which ends at the time he pays and gets the tickets. So the purpose is to be a ticket collector? The purpose of the first scheme is to get the tickets. The second scheme, or so-called alleged scheme, which does not affect what happens in the first scheme, because there's no allegations that he needed the money from the profits of the sales from StubHub to go back and then buy more tickets. In fact, the evidence at trial showed that there was sufficient money always in his account to buy the tickets without having to worry about the sales as what we call the second part of the scheme. So the only purpose of the first scheme was to get discounted tickets from the White Sox? Correct. And then the victim is done. Even though, if you call it a victim, they got paid what they were asking for, either the $5 voucher, the $15 rain delay, whatever voucher was used. But vouchers were not always used for the first portion of that scheme, correct? Well, in the first portion, there was vouchers. Then the second portion is when the co-defendant No, the first, I'm talking about actually acquiring the tickets. In certain circumstances, certain sales, there were actual physical vouchers. In certain circumstances, there were no vouchers. Right. When the co-defendants told them we don't need the vouchers anymore, they just entered in the code number to get it for that voucher, which is obviously the materiality issue, whether or not the White Sox cared about whether there was vouchers because they were just throwing the garbage. Why isn't the fact that as soon as they were alerted to this scheme, they immediately notified law enforcement? Why isn't that pretty good evidence that they did care about it? Maybe they were sloppy. Maybe they had bad tracing procedures. Not everybody is perfect. But as soon as they do find out, they pursue it. Well, but that scheme's already done, Your Honor, and that's the issue of whether or not there's two schemes or one scheme. The scheme is done. Well, they shut it down, though, right? They find out. Well, actually, that's not true because if you look at counts 12 and 13, they let those sales continue to happen, so they don't shut it down. And that's one of the issues we raised as to counts 12 and 13, which happened after the fact that law enforcement already notified. So they just don't shut it down. The White Sox got paid what they were asking for if they are a victim, per se, as to a scheme to defraud with wire fraud. It's because the vouchers weren't provided to get that price tag. However, then there's a gap, and then there's Mr. Lee selling the tickets for a profit to him. The White Sox are not a victim because he profited because they already got the money that they were asking for. It's a property or money crime for the purposes of the wire fraud, which then goes to the next issue of whether or not . . . Do they receive any money for those vouchers? I guess the second portion, what you described is kind of the second portion when the employees of the White Sox indicated they no longer needed physical vouchers. Were the White Sox receiving any financial benefit from those codes and for those special games and things of that nature? There was money being paid by Mr. Lee for the cost of the voucher ticket and money to the individual who was then giving him the tickets, either Mr. O'Neill or Mr. . . . the other codefendant. The White Sox were getting their money based on whatever voucher code was used. That was being put in the till because it had to be because that's what code is being used. I'll give you an example just in front. If it was a $5 voucher that would end up on the ticket when they entered it to print, that $5 had to end up in the White Sox till because that is a computer-generated tick for tack. The money that was paid for the tickets to the codefendants, they pocketed, and then at that point, that is done. There's nothing left to happen. Now also . . . Can I just go back to the other point I was making, though? Yes, it's done in a way. The $5 is in there, but what the White Sox had been trying to do with that $5 ticket was put a happy fan in the stands who had paid $5. Instead, when that ticket goes out on StubHub, I don't know. If it's a good game, maybe it goes for $100. It goes for some amount of money, not $5, which is why it was a profitable . . . Judge, I . . . I'm sorry. I didn't mean to interrupt you. No, no, no. Go ahead. I can go buy a ticket with that same voucher for $5 and go put it on StubHub. The White Sox are trying to get people into the stadium so they're discounting the prices. They want those discounted people because they know other monies are going to be spent on beer and all that stuff. They want people in the stadium. I, myself, can go buy that $5 ticket and then go sell it on StubHub for $100. There's nothing stopping me from doing that just because I used a voucher ticket. Well, this, though, is an overall . . . they go to quite a bit of trouble. Actually, there are these recordings even of Mr. Lee saying, I know this is not right. It was a business to, frankly, to scalp in a way that was not consistent with what the White Sox were doing. I don't want to use all your time, by the way. Can I change the subject and go over to the forfeiture business? Here's what's holding me up on that. It appears to me that the district judge in the sentencing proceedings, first of all, has a full discussion of forfeiture to the point where he actually accepts Mr. Lee's amount for the forfeiture. Mr. Lee is on notice that forfeiture is on the table. He has a full opportunity to present his views on that. The judge is persuaded by his views and uses that number. Then, as I understand this record, the judge orally pronounces sentence, and that oral sentence includes the forfeiture. In those circumstances, why isn't just the general rule that you can always conform the written sentence to the oral pronouncement, and that the oral pronouncement controls the one that we should be following, essentially the Rule 36 approach? Because, Judge, the rules for forfeiture were never followed by the government. They never filed a preliminary order for it. I know they didn't, but I'm saying it depends on what kind of rule you think this is because the purpose of this rule surely is notice and opportunity for the defendant to contest the amount of forfeiture and opportunity that Mr. Lee took full advantage of. Why can't this one mistake by the district court be corrected? Well, it's not a mistake by the district court, Judge. It's a mistake by the government because the government is the one who needs to file the preliminary order of forfeiture. In our situation, they don't file it until four months after the sentence when the notice of appeal has been filed. So this is their fault. They don't file it. Then they try to chalk it up to a clerical mistake, but you can't have a clerical mistake when nothing was filed in the first place. Well, the reason I think they're saying it's a clerical mistake, which may be wrong, you may be right, is had the oral sentence not been pronounced as it was, I think you'd be on very solid ground. But the fact that the judge orally does pronounce a sentence that includes forfeiture I think has some significance here. But, Judge, if you look at the case law you've been out of this district and others, it follows the four-part test. That preliminary forfeiture has to be filed by the government in order, even if there's an oral discussion about it, and it doesn't end up in the sentencing as what happened in this case. There's still procedure under the Rules 32.2 where it has to be followed, where A, there has to be notice in the indictment, which there was. No one's contesting that part. There was no preliminary order. At some point prior to the sentence, the judge enters the preliminary order. That just didn't even happen in this case. There's discussion about it without a preliminary order being entered, and then in the sentencing it's void. What about this language in the Sixth Circuit's Maddox case where it says, the district court did not, for example, enter a preliminary forfeiture order before either Maddox's or Carmen's sentencing hearings, blah, blah, blah, and then it says, such failures standing alone might be remedied where forfeiture is ordered at least during sentencing because that necessarily ensures that the defendant knows of the forfeiture at sentencing. So at least the Maddox case seems to suggest that this is a correctable flaw. But Judge, in that case, it's discussed. There's a preliminary order of forfeiture. It's discussed, but then even in our case here, it's not in the judgment. The forfeiture is not in the judgment. It's in the oral judgment. There's an oral pronunciation of sentence, but the sentence becomes final when the judgment is entered. Just like a notice of appeal can't be filed until the written judgment is entered. That's the guiding factor. Actually, they are filed, and then they spring forward sometimes. Right, but the stamp date would be judged when the notice or when the physical written judgment is entered, and that's the basis for where there's the problem here. So it can't be a clerical issue because it was never in the judgment. But why is this argument not waived? By who, us or the government? By you. It's the government's argument. My question being, though, if, as Judge Wood is suggesting, this was fully argued forfeiture in the trial. And at sentencing, the defendant actually put forth a number, did not contest forfeiture, agreed that forfeiture was appropriate, however, argued for a different forfeiture amount. The judge agreed with that calculation based on the evidence presented at the trial and orally pronounced that sentence. This is not looking at the Shakur case, which is the case that the district court relied on. Why could this error of not entering a preliminary order forfeiture not be corrected under Rule 36? Well, Judge, there's two different issues because there's no preliminary order forfeiture. And then the judgment, actual physical judgment, written, not oral, did not contain it. So you have multiple errors that are not clerical in nature and therefore cannot be fixed. And then the government waives the amount of time to fix a clerical error. They wait four months after a notice of appeal by Mr. Lee is already filed before they get there. I see I have 23 seconds left for rebuttal, so if Your Honors wouldn't mind, I'd like to save at least 20 of those. Mr. Sandin, I'll give you three minutes for rebuttal. Thank you, Judge. Thank you. All right, let's hear from the government. Ms. Peterson. Good morning. May it please the Court, Michelle Peterson for the United States, and I'm going to start with the government's cross appeal. Can I ask you a question about the government's cross appeal first? Judge Connelly, when he denied the government's request to amend the judgment, didn't think that he had entered an order of forfeiture, right? And so I suppose we could read the sentencing transcript and think to ourselves that he did, but he himself stated during when he announced his ruling that he hadn't. Why doesn't that just answer the question of whether or not Judge Connelly did or did not enter orally a preliminary order of forfeiture at sentencing when he himself didn't think that he did? I think that Judge Connelly's reasoning is a little more nuanced, and I think that what Judge Connelly was concerned about when he was dealing with the government's motion to correct the clerical error was whether or not he had entered a preliminary order of forfeiture, not whether or not he had entered forfeiture at all. And he was trying to look at Rule 32.2 and square what had happened with the rule. And I think Judge Connelly was concerned that without a preliminary order of forfeiture, he may have not had the authority to order forfeiture at sentencing. And Judge Connelly acknowledged that it was murky and unclear, and it was a little bit sort of confusing about what to do in the procedural posture that he found himself in. But his confusion, I think, comes from the language of the rule. It says the Rule 32.2B4B states the court must also include the forfeiture order, not just forfeiture statement, forfeiture order, directly or by reference in judgment if the court's failure to do so may be corrected at any time under Rule 36. It seems to me that's what he was focusing on, was how to make sense of the word order as it meets that rule. And so it seems to me that his inquiry was on point. And then he concludes, you know what, I didn't do that. And so I'm still trying to figure out whether you're asking us to second-guess Judge Connelly and say, in fact, even though he didn't think he had entered an order of forfeiture, that in fact he had. And I think that Judge Connelly was... Well, if you could answer my last question first, which is, are you asking this court to second-guess Judge Connelly and say, in fact, Judge Connelly, you had entered a forfeiture order during the sentencing, even though you didn't think you did? Yes, I suppose we are asking this court to do that. And I think some of the confusion comes with Rule 32.2B4B, which is what Your Honor was just referencing,  when orally announcing the sentence. And then must include the forfeiture order in the judgment. Does that mean the preliminary order, or does that just mean a forfeiture order generally? And I believe that that means a forfeiture order generally. Rule 32.2, as it talks about orders, sometimes it talks about preliminary orders of forfeiture, sometimes it talks about just orders of forfeiture, indicating that there's a difference between the two. And there are circumstances envisioned by Rule 32.2 where there would not be a preliminary order of forfeiture at all. Cases where the court can't determine the amount of forfeiture. And in that case, Rule 32.2 states that there could be a general order instead. So there are different vehicles that a court can use to arrive at ordering forfeiture at sentencing. I don't think the... Certainly the absence of a preliminary order does not mean that there can't be an order of forfeiture at sentencing. And I think that that's where the district court was getting hung up on whether or not that could happen. But don't you think then that if we read 4B that broadly, then we're basically reading out the word order? Because it could just as well read, the court must include the forfeiture when orally announcing sentence or must otherwise ensure the defendant knows of the forfeiture sentencing. The court must also include the forfeiture directly or by reference in the judgment. I think if the rule had said that, then I think your argument becomes more persuasive. But unfortunately, the rule doesn't. The rule doesn't, but there was an oral order of forfeiture. And both parties have cited cases where at sentencing, something happens where the court says something like, oh, we'll get to forfeiture later or I'm going to include forfeiture in the judgment without saying specifically what's being forfeited or what amounts. In that case, that wouldn't be enough. But in this case, the judge was clear at sentencing. He said the forfeiture amount will be X, and then he stated a specific amount. So he did make an oral finding as the amount of forfeiture, and that certainly can be an order of forfeiture. But normal forfeiture order, but the usual thing you'll see with the preliminary order, I'm sure you know this, is you'll not only see a certain amount, but you might see, you know, this car and this gun or this item is among the things that the government's going to take. And so the defendant has an opportunity to say, wait a minute, you know, that's not even my car, you know, or whatever they want to say about that. I take it the forfeiture here you're just assuming is just dollars from wherever he can put his hand on the money. But there are purposes to the preliminary forfeiture order that when you slide over all of these things, maybe have not been achieved here. And it really seems sloppy of the government, by the way, not to have made sure that order was in there. Yes, I recognize the government failed in not providing a draft preliminary order or general order before the sentencing so it can be ordered. But I do think in this case it is a money judgment. The point of a preliminary order of forfeiture is to provide notice. And when we're talking about specific property, a house or a car, that's heightened because the parties want to make sure no one else has a claim to that. The parties want to make sure the PIN number or the VIN number is correct. You know, there are certainly reasons why a preliminary order of forfeiture is important. But in this case it is money. And it's money that was not decided until sentencing. And that's what both parties had sort of agreed. The court should hold a hearing and the court should discuss and decide how much money should be in the money judgment. So the lack of notice, the lack of a preliminary order of forfeiture did not impact this particular defendant because he knew how much the government was seeking. He knew it was an issue with his sentencing. He had a full opportunity to be heard, both written and orally. And he had a hearing where the judge found in his favor and found, yes, I find forfeiture in the lower amount you're seeking instead of the higher amount that the government's seeking. So if there had been a general order or a preliminary order of forfeiture, it wouldn't have provided any additional notice to the defendant other than what he was already getting and the process that he already received. Even if you're right, is this something we can do? What I'm looking at is the classifications that the Supreme Court used in the Dolan decision, whether something was a jurisdictional structure or whether it's a claims processing set of deadlines or whether it's just a more, you know, this is the way you ought to do it, time-related deadlines but that are maybe subject to this kind of functional adjustment that you're talking about. I'm not interested in calling it jurisdictional because the way I read the Supreme Court of late is they're trying to wean people from that categorization, but I'm not sure why it's not a claims processing deadline. Well, of the circuits that have analyzed it, three have found that it's a time-based directive and one has found that it's a claim processing rule. But either way, in this case, the court can provide the government the relief that it seeks because if it were a claim processing rule, the defendant has to assert an argument that the time deadlines had not been followed prior to a ruling on the merits. And if a defendant doesn't, then that claim is forfeited and not forfeited in the way that we talk about forfeiture and waiver but forfeited in the sense of he cannot now try to get the court to enforce that deadline. And in this case, at sentencing, the defendant does not object. He does not say there was no preliminary order of forfeiture, there was no general order of forfeiture. It proceeds to an argument on the merits and the court decides it on the merits. And once that has happened, the defendant can't then assert that there had been a timeliness problem. That's the Eberhardt case and other cases. And in this case, the defendant waited until months after the sentencing to raise for the first time there had not been a preliminary order of forfeiture, and it's too late. So even if this court were to determine that this is a claims processing rule, it could still give the government the relief it seeks. And certainly it could give the government a relief that it seeks if this were a time-based directive as the government articulated in its brief. Staying on the topic of jurisdiction versus other types of rules, I'd like to talk about 4C, the time to appeal. Yes. So 4C says the time for the defendant or the government to file an appeal from forfeiture order or from the court's failure to enter an order begins to run when judgment is entered. The government here failed to file an appeal of the court's failure to enter a forfeiture order. So why doesn't that end the inquiry right there? Well, again, the government's position is that the oral pronunciation of forfeiture at sentencing was a forfeiture order, and the case law is clear that a judgment must match what happens orally at sentencing. And if it doesn't, that failure can be corrected at any time. And so the government was not untimely in seeking a Rule 36 motion, and it was not untimely because that could have happened at any time. Well, then, if the government thought that the court had entered a forfeiture order, then why did it ask the court to amend the judgment at all? With the motion for a preliminary order of forfeiture? Your Honor, I think that was the government's sort of clumsy way of trying to bring it to the court's attention, trying to get that order put into the judgment. And so I think it was just an artful attempt to get the relief that it sought. Are there any other consequences? I mean, having it all nice and tied up in the written judgment, are there enforcement advantages or other things that, as a practical matter, would change? I don't think that it is enforceable until there's a written order in the judgment, until there's a final order of forfeiture. So that's why we have these motions, to conform the written judgment to what was pronounced orally. Correct. Correct. So I don't think the government's appeal is untimely, and that's because there was an oral order of forfeiture. All right, with two minutes left, unless there's any more questions about forfeiture, I will move sort of back to where Mr. Sanan started, which is the scheme to defraud. You know, in here, a properly instructed jury convicted the defendant of wire fraud, and this court should affirm that verdict. The scheme to defraud, as alleged in the indictment and proved at trial, had two pieces, or had multiple steps. The defendant and his co-schemers got over 30,000 tickets from the White Sox. They did it through materially false representations, the vouchers, or the thousands of rainout tickets they got for free, with no money being paid to the White Sox whatsoever. And defendant... Ms. Peterson, I'm sorry, we have limited time. Can we move to the sentencing question regarding the sentencing calculation around loss? Absolutely. Yes. Yes. The district court did not clearly err when it used gain as the loss figure for guidelines purposes, when the actual loss could not be determined. There was a lengthy sentencing hearing, and during it, the district court and the parties sort of went around and around about this idea of what would have happened but for the defendant's fraud. All these 30,000 tickets he obtained, would the White Sox have sold them? Would they have not sold them? And how much would they have sold them for? And in the end, the district court concluded that it was in a realm of uncertainty, and that he didn't think there was any way to tell what of those tickets would have been sold. And because he couldn't tell which would have been sold or not sold, he couldn't calculate an actual loss. And without an actual loss, he properly turned to the guidelines and saw under 2B1.1, application note 3B, that he could use gain as an alternative measure of loss because he could not reasonably determine the full amount of actual loss. The district court determined that for some of the tickets, he could determine some amount of loss, but not for all the tickets, and not for the over 20,000 tickets the defendant got completely for free. And that's not- I guess that's what's the distinction between this and the Mount case, using the, I think it was the bargain element methodology. So in the Mount case, the tickets at issue had been taken. No money had been returned to the twins whatsoever. And this court, in determining what that loss would be, thought the loss was not only the amount of the- the face of what the tickets that they were going to sell to the customers were, which was $12,000, but this court also said there would be a loss of the difference between that amount and what the defendant, in that case, was willing to pay for it, what the market value kind of on the street would have been. Because the difference between that face value and the market price was an element of value to the twins. So applying Mount to this case, the loss is not just the face amount on the tickets, it's that plus whatever amount those tickets could have sold for had the White Sox been able to sell them legitimately on the open market. So I do think Mount supports, you know, a higher loss amount in this case. In the end, the district court did not use Mount. It used Gain because the district court could not determine which tickets would or wouldn't have been sold. And I think that was not clearly erroneous for the district court to do so. All right. Seeing that I'm out of time, this government respectfully requests the court affirm the defendant's sentence with a limited remand to enter a final order of forfeiture and to amend the judgment. Thank you, Ms. Peterson. Mr. Sassen, you have three minutes, please. Addressing Justice Pryor's question about the Mount case, the Mount case should have been followed in this case because the value of the tickets could have been determined to that $74,000-some-odd amount that then was used for restitution purposes. So Mount is used for restitution, and I'm not saying restitution and loss are the exact same thing, but under Mount, Judge Connelly used Mount to determine what restitution was, which is based on actual loss or what the White Sox are out and should be paid back for restitution purposes. So therefore, that amount should have been used as actual loss as the price of the tickets or loss to the White Sox. And in fact, during the sentencing hearing, we did go back and forth, and there was arguments as to what the ticket mounts were. For the judge to use gain, which if you look at the guidelines, clearly says it's an alternative measure. Here, there's no basis for an alternative measure because this court's case in Mount guides Judge Connelly on how to determine what the actual loss was, which is the $74,000, which would have significantly reduced Mr. Lee's guideline range. Turning over to the forfeiture issue, Justice Lee, as Your Honor said, in this situation, the government has forfeited its opportunity to go back and ask for forfeiture. They didn't follow the required steps. Then they filed a motion. Judge denied it because he said he never ordered the enter. In the actual final written judgment, as the government concedes, there is no order forfeiture, so how can Mr. Lee then have to file something saying the deadline is blown? The government had their timeline to get the final written judgment fixed. They did not do that. They waited some four months after the notice of appeal by Mr. Lee was filed to then go back in what they now call fix a clumsy situation. So that's why this, in some ways, boils down to the question whether this is a Rule 35 situation or whether it's a Rule 36 situation because there wouldn't have been a deadline if it's Rule 36. There definitely would have been a deadline if it's Rule 35. Correct. And if there was a mistake in the oral order, I mean, it's really procedural steps that you're arguing a mistake and not the substance of the oral judgment. Well, it technically is the substance because, Justice Wood, there has to be a preliminary... I'm just a judge. Judge Wood, sorry. There has to be that preliminary order forfeiture before you get to sentencing. And as Your Honor described earlier when you used the case of cars and things like that to put the defendant on notice, and forfeiture has always been a preliminary order before you get to sentencing. The judge enters the preliminary order before you get to sentencing. You argue it if there's arguments to be made at sentencing. The judge orders or makes an oral ruling as to what forfeiture would be and then includes it in the final judgment. Here, you're missing several steps, which you can call procedure in that situation because, one, there's never, prior to sentencing, a written preliminary order forfeiture filed by the government. The judge never rules on it before we get to sentencing. When you get to sentencing, there's oral arguments and discussions regarding it. Then you get to the final written judgment, which, as I've stated when I was up here before, is what triggers timing and clocks to start, even though Your Honor said, yeah, it backdates in the system or backstamps. But you have multiple steps that the government failed to come forward with, and therefore they forfeited. Then they don't come back in 14 days. They finally realize after the notice of appeal is filed by Mr. Lee that there no longer is a forfeiture that they can collect on. So the government's right. They cannot collect this forfeiture because there was never a forfeiture entered, as we sit here today. My time is up, unless Your Honor has any questions. Thank you very much. The case will be taken under advisement.